## FUNG YUN HAM v. NAGLE, Commissioner of Immigration.

Circuit Court of Appeals, Ninth Circuit. November 21, 1927.

No. 5187.

1. Aliens ☞32(18)—Order excluding Chinese immigrant, because father was not shown to have been born in this country, held supported by evidence (8 USCA § 6).

Order excluding a Chinese immigrant, claiming right of entry as son of a native-born citizen, within Rev. St. § 1993 (8 USCA § 6), *held* supported, on the ground that the evidence on the hearing failed to show that the father was born in this country, though it was so found in 1899, when he entered after residing in China, as he admitted, since a child.

2. Aliens ☞32(17)—Admission of Chinese person as citizen held not conclusive of citizenship on application of another claiming right of admission as his son (8 USCA § 6).

A finding, after hearing, that a Chinese person was born in this country, and his admission on such finding as a citizen, admitting it to be a conclusive adjudication as to him, is not as to another, claiming right of admission as his son, within Rev. St. § 1993 (8 USCA § 6).

Appeal from the District Court of the United States for the Southern Division of

the Northern District of California; Frank H. Kerrigan, Judge.

Petition by Fung Yun Ham against John D. Nagle, Commissioner of Immigration for the Port of San Francisco, for writ of habeas corpus. From a judgment denying the writ, petitioner appeals. Affirmed.

Joseph P. Fallon, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. This is an appeal from a judgment dismissing a proceeding in habeas corpus, brought by and on behalf of Fung Yun Ham, a Chinese boy 17 years old, to test the validity of the action of the Bureau of Immigration in denying him admission into the United States. The issue was disposed of by an order sustaining a demurrer challenging the sufficiency of the petition, which, pursuant to stipulation, as is the common practice, was deemed to embrace the immigration record. The petitioner, who is foreign-born, predicates his claim of right to enter upon the contention that his father, Fung Chong, is a native-born citizen of the United States. Section 1993, R. S. U. S. (8 USCA § 6). Upon a hearing the immigration officials were convinced of the relationship, but excluded the petitioner because of an adverse finding respecting the father's nativity. Within the narrow range of review open to the courts in such cases, we are to consider whether the petitioner was accorded a fair hearing and whether the evidence warranted exclusion upon the grounds stated.

[1] Fung Chong, the father, has at all times consistently claimed that he was born on June 24, 1879, at 613½ Jackson street, San Francisco, and that in 1882 he was taken by his parents to China, where he remained until 1898. In the fall of 1898 he returned or came to the port of San Francisco, where, after a delay of approximately four months and what would seem to have been a fairly complete investigation by the collector of the port, he was landed as a native-born citizen. This was on February 7, 1899. Thereafter he made four trips to China, departing in 1904 and returning in 1905, again in 1909 and returning in 1911, again in 1915 and returning in 1917, and finally going in 1922 and returning in 1924. While two of these trips followed preinvestigation touching his status,

made upon his request, and in each case he was permitted to re-enter as a native-born citizen, it is apparent, we think, the later entries were based almost exclusively on the regularity and sufficiency of the record made in 1899.

Sworn as a witness on behalf of his son in the instant proceedings, he was subjected to a rigid and extended examination by members of the Board of Special Inquiry upon a great variety of subjects, and, as already indicated, upon the subject of paternity the board found his testimony satisfactory, expressly stating it to be in "good agreement" with that of the other identifying witness. In respect of his nativity, the board based its adverse conclusion upon two grounds—the first, a seeming discrepancy in family names, as used or referred to by him at different times; and the second, conflicts between his present testimony and that given by him and his witnesses at the investigation in 1899. The Board of Review, very properly we think, rejected the first ground as being without merit. "The fact is," said that board, "that in the Heung Shan dialect, which is that of the province from which the appellant came, the name "Fung" is pronounced "Hung. * * * If the Board of Special Inquiry had examined the past records a little closer, it is believed the matter of the name would hardly have been listed as an adverse feature." But the two boards concurred in holding the other discrepancies to be so serious as to justify exclusion of the petitioner.

It seems that one Fung Poy or Hung Poi, alleged to be Fung Chong's uncle, and one Low Kwong, and another Leung Yung, gave testimony or made affidavits in support of Fung Chong's application in 1899, and he himself testified upon his own behalf at that time. During the course of the instant investigation, he stated that he had never seen any one of these men in China, but that his father, who did not accompany him or give testimony at that time, told him about them before he departed for this country, and that he saw them only in connection with his admission here; that he visited Fung Poy about two or three weeks after he was admitted, and never saw him thereafter; that while in China, from 1882 to 1898, he (Fung Chong) lived with his father over the latter's store, but that he had no recollection of seeing Fung Poy or Low Kwong there. Such was the status of his testimony when he was excused from the stand. Subsequently, however, after the petitioner and another witness had testified, he was recalled for further

interrogation, and his attention was called to the statements purporting to have been made in the course of his testimony at that time and in the affidavits of Hung Poy and Low Kwong. Thereupon he testified substantially as follows:

"* * * Q. Did you see your uncle in your life? A. I only saw him in KS 24 in San Francisco.

"Q. Did you ever see your alleged uncle, Fung Poy, while you were living in China, prior to KS 24? A. No. * * *

"Q. Was your alleged paternal uncle, Fung Poy, a married man? A. I do not know. * * *

"Q. Did you ever hear whether or not your uncle had a family? A. No; I never heard."

Thereupon what purported to be the witness' signature upon a stenographer's note-book No. 137, a part of the record of the hearing of 1899, was shown to and identified by the witness, whereupon he was further interrogated:

"* * * Q. Is there any one in the United States who can testify that you were born here? A. No.

"Q. Will you explain why you testified on January 27, 1899, that your uncle, whom you called Hung Poy, while in China had lived in the same house with you, if, as you now state, you had never seen this man in China? A. I did not make such a statement.

"Q. The notes taken at the hearing over the signature that you have acknowledged as yours show that you did make such a statement. A. No; somebody made a mistake.

"Q. If some one made a mistake, how is it that you are represented as answering that your uncle was married, and you went so far as to name his wife? A. No; I did not make such a statement. * * *

"Q. Who is Leung Yung? A. He is a friend of my father.

"Q. Where did you meet him? A. in San Francisco, after my admission in KS 24.

"Q. Had you ever met him prior to your admission in KS 24? A. No. * * *

"Q. When you were asked, 'Is there anybody in this country who has ever visited your home in China?' you said, 'Yes, Leung Yung.' A. I don't remember where I met him first; it may have been in China or in this country. * * *

"Q. You have previously testified in regard to Low Kwong, whom you said was a friend of your father. Did you ever see Low Kwong prior to KS 24? A. No.

"Q. Are you sure you never saw Low Kwong in China prior to KS 24? A. Not that I can recall.

"Q. You are now informed that your alleged father's friend, Low Kwong, made an affidavit in your behalf in KS 24, when you were an applicant for readmission to this country as a native, and therein stated that he had visited China in KS 20 (1894) and had returned in KS 22 (1896); that he frequently saw you at your father's home during those two years. Was that statement of Low Kwong false at that time? A. I never saw him in China; if he did see me, I don't know anything about it."

From the affidavits of Fung Poy and Low Kwong, and a transcription of the stenographic notes referred to, all of which were before the Board, it appears that these questions fairly reflect testimony given upon his former hearing. Undoubtedly the discrepancies relate to material matters and are of a serious character. It is to be noted that, while Fung Chong's examination in the instant case was extended to great length, after all, very little of it relates to his nativity. Naturally, there was little he could testify to directly upon that subject; and there was no corroborating witness. In some of its aspects the story he told before he was recalled is not, upon its face, highly convincing. It was to the effect that he was his father's only child, and that when, in 1898, he left China for San Francisco, his father did not accompany him or provide him with any papers of any kind, but only informed him that, when he arrived here, an uncle and other witnesses, none of whom he had ever seen, would assist him; that his contacts with these persons after he arrived were extremely meager, and after he was landed he never saw any one of them, except the alleged uncle, whom he saw but once, and that shortly thereafter. He knew nothing about the families of any of them, not even of the alleged uncle, and little, if anything, of their occupations. If it be conceded that, after such a lapse of time, a court, applying the standards of judicial procedure, would not, because of these discrepancies alone, disturb a status so long recognized, we are, after the most solicitous consideration, unable to say that they should have been disregarded by the administrative officers, or that as a matter of law they furnish insufficient ground for the adverse ruling.

[2] The suggestions that petitioner is entitled to a judicial hearing, and that the former administrative action in landing the father as a native-born citizen constitutes a judicial

estoppel, are thought to be ruled adversely by prior decisions of this court. White v. Chan Wy Sheung, 270 F. 764; Lee Hing v. Nagle, 295 F. 642. See, also, Quon Quon Poy v. Johnson, 273 U. S. 352, 47 S. Ct. 346, 71 L. Ed. 680. The fact that the father, who resides in, and claims to be a citizen of, the United States, joins in the petition with the nonresident applicant, in no wise affects the latter's status, or enlarges his rights. And, even were petitioner's contention to be conceded, that the department cannot revise or ignore its former conclusion, made upon full hearing, without additional evidence, undoubtedly the instant testimony of Fung Chong should be held to constitute such new evidence.

The further suggestion that appellant did not have a fair hearing, because the entire record of the proceeding in 1898–99 was not put in evidence, is without substantial merit. True, a transcription of only a part of the stenographic notes was made and offered in evidence, and possibly there were other parts of the record omitted. But, though given an opportunity to offer further evidence, petitioner did not ask for more of the record, and makes no showing that anything else therein contained is material. Upon the facts of the case, clearly Kwock Jan Fat v. White, 253 U. S. 454, 40 S. Ct. 566, 64 L. Ed. 1010, is distinguishable. Had the boards suppressed, or, upon petitioner's request, declined to put in and consider, any part of the earlier record, or had they considered, without putting in, such record, a different question would be presented.

The judgment is affirmed.